UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA | : |
| | : |
| v. | : Crim. Nos. 3:19-cr-00229 (AWT) |
| | :            3:08-CR-61 (AWT) |
| SHAUN HAWKINS | : |

## **ORDER DENYING MOTION FOR COMPASSIONATE RELEASE**

For the reasons set forth below, defendant Shaun Hawkins's amended motion for reduction of sentences (ECF Nos. 82 and 79 in Case No. 3:19-cr-00229 and ECF No. 105 in Case No. 3:08-CR-61) is hereby DENIED.

On July 6, 2021, the court imposed two sentences on defendant Shaun Hawkins.  The court imposed a fifteen-month sentence for possession with intent to distribute crack cocaine and a twenty-four-month sentence, to be served consecutively, for Hawkins's violation of the terms of his supervised release. At the time he committed the drug offense, Hawkins was on supervised release following a ninety-six-month federal sentence for obstruction of justice.

The defendant states in support of his motion that "[g]iven the developments in the pandemic and the circumstances at FCI Danbury, particularly in light of Mr. Hawkins's health conditions, the Court should find that there are extraordinary

and compelling circumstances supporting a reduction in Mr. Hawkins's sentences and reduce them accordingly." Def.'s Am. Motion (ECF No. 82) at 1. Also, he maintains that his rehabilitation further supports a sentence reduction.

Section 3582(c)(1)(A) of Title 18 of the United States Code requires as an initial matter that:

> the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier . . . .

18 U.S.C. § 3582(c)(1)(A). Assuming a defendant has exhausted administrative remedies, a court may reduce a term of imprisonment under Section 3582(c)(1)(A)(i) if, after considering the factors set forth in 18 U.S.C. § 3553(a) to the extent they are applicable, the court finds that "extraordinary and compelling reasons warrant such a reduction" and "that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission". 18 U.S.C. § 3582(c)(1)(A)(i).

It is undisputed that the defendant has satisfied the requirement with respect to exhaustion of administrative remedies. However, the defendant's motions are being denied for two reasons.

First, the defendant has not shown that extraordinary and compelling reasons warrant a sentence reduction. The defendant

2

argues that there are extraordinary reasons to reduce his sentence because health conditions place him under increased risk of severe illness if he is infected with COVID-19 and his rehabilitation further supports a sentence reduction.

The defendant had received two shots of the Moderna vaccine at the time that he surrendered to serve his sentence. It is undisputed that the defendant has serious health conditions; in fact the government did not object to Hawkins being released due to health concerns in the early days of the COVID-19 pandemic after he had been initially detained after being arrested on the drug charge in September 2019.

> For months after BOP began administering vaccines, district courts within the Second Circuit routinely concluded that for vaccinated prisoners—even prisoners with medical conditions that would otherwise put them at risk—the pandemic did not amount to an extraordinary and compelling reason for release. See United States v. Kosic, 2021 WL 1026498, at *2 (S.D.N.Y. Mar. 17, 2021) ("[C]ourts in this circuit have found that vaccination mitigates the risk an inmate faces from COVID-19 to the point that his health conditions weighing in favor of release are no longer extraordinary and compelling."); see id. (collecting cases).

Gov't's Opposition at 7. The defendant argues that the emergence of the Omicron variant (and whatever variants follow) shows that his health conditions nonetheless constitute extraordinary reasons for reducing his sentence. However, as the government notes,

> The CDC has determined that, while Omicron more easily evades vaccines than past variants, "[c]urrent vaccines are

3

>    expected to protect against severe illness,
>    hospitalizations, and deaths due to infection with the
>    Omicron variant." See CDC, Omicron Variant: What You Need
>    to Know, *available at* https://www.cdc.gov/coronavirus/2019-
>    ncov/variants/omicronvariant.html?s_cid=11734:covid%20varia
>    nt%20omicron:sem.ga:p:RG:GM:gen:PTN:FY22 (last visited
>    February 4, 2022); see also id. ("Omicron infection
>    generally causes less severe disease than infection with
>    prior variants.").

Gov't's Opposition at 8. The court agrees with the government that

>    While vaccinated inmates are not guaranteed to avoid
>    Omicron, they retain strong assurance against severe
>    outcomes. See, e.g., United States v. Vasquez, No. 3:17-cr-
>    232 (VAB), 2022 WL 119233, at *4 & n.6 (D. Conn. Jan. 12,
>    2022) ("The Omicron variant does not change Mr. Vasquez's
>    risk level. . . . Current vaccines are expected to protect
>    against severe illness, hospitalizations, and deaths due to
>    infection with the Omicron variant."); United States v.
>    Jaber, No. 13-cr-485 (CM), 2022 WL 35434, at *2–3 (S.D.N.Y.
>    Jan. 4, 2022) ("[R]ecent studies have revealed that Omicron
>    causes a less serious infection in most people,
>    specifically sparing the lungs, while vaccination still
>    provides excellent protection against the most severe
>    consequences of even this new variant—death and extended
>    hospitalization."); United States v. Mutimura, No. 19-cr-
>    592 (LGS), 2022 WL 220079, at *2 (S.D.N.Y. Jan. 25, 2022)
>    ("Even with the emergence of variants, the vaccine is still
>    highly effective at preventing death and serious injury,
>    especially for individuals who have received a booster,
>    which the BOP has made available since October 2021.").

Id.

The defendant also argues that his rehabilitation supports a sentence reduction. To the extent that he relies on his good behavior while at Wyatt Detention Center and his conduct while on release pending sentencing, the court agrees with the government that "a given factor provides scant support for

4

reducing a sentence if it was part of the total mix of information giving rise to that sentence in the first place." Id. at 11.  With respect to the defendant's conduct after he began serving his sentence, complying with prison regulations is behavior that is required of all inmates.  More is required to demonstrate rehabilitation that will support a sentence reduction.  See United States v. Mumuni Saleh, 946 F.3d 97, 112 (2d Cir. 2019) ("no substantially mitigating weight can be borne [] by the fact that Mumuni did what was plainly required of him— that is, behaving himself in prison").

Second, even if the defendant could demonstrate that there are extraordinary and compelling circumstances in his case, the section 3553(a) factors weigh against reducing his sentence because of the substantial risk of recidivism here.  The government states, correctly, that Mr. Hawkins's "criminal history evinces a long-running and consistent disregard for the law, including through violence and repeated offenses while under court-ordered supervision."  Gov't's Opposition at 13.  The court agrees with the government that "[t]he prospect of recidivism is particularly acute given his repeated commission of offenses while under court sentence or supervision (including the offense and supervised release violation for which he is currently incarcerated)."  Id. at 14.  The government accurately

5

summarizes on pages 13 and 14 of its memorandum the facts that support those conclusions:

> That history began in 1997, when Mr. Hawkins was sentenced to serve 30 months of imprisonment for offenses including Sale of Hallucinogen/Narcotic, Failure to Appear, First-Degree Reckless Endangerment, and Interfering/Resisting Arrest. See PSR ¶¶ 35–40. He was incarcerated from June 1997 until his release to parole in January 1999. Six weeks later—in his first, but by no means last, violation while on release—he absconded. He was returned to custody in April 1999 and not released until April 2000. He went back to jail in March 2001; his probation was revoked, and he was sentenced to four years' imprisonment. He was released in April 2004, but returned to custody from January through May 2005. After his release on parole, he was yet again returned to custody on new charges in August 2005, and was then released the following month. See PSR ¶¶ 38, 40–44.
>
> Mr. Hawkins was next arrested on April 27, 2007, when police responded to an active home invasion robbery. See PSR ¶ 46. Mr. Hawkins and a confederate physically assaulted several victims to steal their money, jewelry, and car keys. Id. Mr. Hawkins was arrested and detained.
>
> While Mr. Hawkins's robbery case was pending in state court, federal authorities opened a grand jury investigation into potential violations of 18 U.S.C. §§ 922(g)(1) (felon in possession of a firearm) and 1951 (Hobbs Act robbery). In a maneuver that displayed an unusual degree of contempt for lawful authority, Mr. Hawkins worked from prison to obstruct the investigation by coordinating a payoff to a witness who had been subpoenaed to give grand jury testimony.
>
> Mr. Hawkins pleaded guilty to obstruction of justice, and in March 2009 Judge Underhill sentenced him to 96 months of imprisonment. See PSR ¶ 47. Separately, for the robbery, he was sentenced in state court to twelve years' imprisonment, suspended after five years, running consecutive to the federal sentence. See PSR ¶ 46.

Id. at 13-14.

Hawkins's federal supervised release term began on March 1, 2018. By August 2019, he was selling crack cocaine, and on August 30, he scheduled a crack cocaine sale around a meeting with his federal probation officer. Consequently, the court also agrees with the government that "Hawkins's pattern of criminality over the course of his adult life is likely a more reliable predictor of future behavior than his stint on federal pre-trial (then pre-sentencing) release—particularly because that release carried a built-in incentive, the prospect of favorable consideration at sentencing, that would be absent if Mr. Hawkins were released from prison." Id. at 15.

It is so ordered.

Signed this 20th day of April 2022 at Hartford, Connecticut.

/s/AWT
Alvin W. Thompson
United States District Judge